## Commonwealth ex rel. Fox, Appellant, *v.* Maroney.

Submitted March 13, 1967. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*George E. Fox,* appellant, in propria persona.

*Edwin J. Martin* and *Charles B. Watkins,* Assistant District Attorneys, and *Robert W. Duggan,* District Attorney, for appellee.

150

OPINION BY MR. JUSTICE EAGEN, April 18, 1967:

On September 30, 1960, the appellant, George E. Fox, was convicted by a jury in Allegheny County of murder in the first degree, and the penalty was fixed at life imprisonment. No post trial motions were filed, and sentence was imposed in accordance with the jury's verdict. No appeal was filed from the judgment.

In 1963, Fox instituted habeas corpus proceedings in the Court of Common Pleas of Allegheny County which were dismissed without hearing. On appeal we affirmed, 417 Pa. 308, 207 A. 2d 810 (1965).

In this habeas corpus action, Fox alleged that a confession given to the police following his arrest and introduced in evidence against him at trial was coerced, and hence constitutionally tainted. At trial the challenged confession had been admitted in evidence without objection or any issue raised as to its voluntariness; hence, we ruled that Fox was precluded from raising the question for the first time in a collateral proceeding.

Subsequently, a habeas corpus petition was filed in the United States District Court for the Western District of Pennsylvania, wherein the voluntariness of the confession was again questioned.

After hearing, the Honorable WALLACE S. GOURLEY, Chief Judge of that court, directed that the writ of habeas corpus issue, unless the courts of the Commonwealth of Pennsylvania afford Fox an evidentiary hearing as to the voluntariness of the confession involved and enter an adjudication; or, in the alternative, grant him a new trial.

In accordance with Chief Judge GOURLEY's decision, the Court of Oyer and Terminer of Allegheny County subsequently conducted a hearing on the voluntariness issue. The sole contention of Fox at this hearing was that at the time the confession was given, he was so intoxicated or suffering from the results of such over

indulgence, he could not have made any voluntary or intelligent statement. After a careful consideration of the testimony offered, the hearing court concluded that at the pertinent time Fox was in complete possession of his faculties and his statements recorded in the confession were free and voluntary, and ruled that the confession was properly admitted as trial evidence and a new trial was, therefore, not required. An appeal from that order is now before us.

In the federal court hearing a psychiatrist, Dr. Raymond L. Rau, who examined Fox for the first time in February 1966, testified that in his opinion Fox truly suffered from alcoholic amnesia on July 5, 1959, the day on which the confession was given. This coupled with the testimony of Fox himself, that he did not remember any of the events which occurred at or about the time of the murder on July 4, 1959, or talking with the police the following day, undoubtedly influenced the federal district court's conclusion that an evidentiary hearing on the voluntariness issue was required.

At the hearing in the present action, Dr. Rau again testified, but now his opinion had changed materially. He told the court that as the result of an examination of Fox conducted subsequent to the federal court hearing, it was now his opinion that no amnesia existed at the time the confession was given. He further opined that, while Fox may have suffered some mental confusion at the time involved, the claimed amnesia was in large part "deliberate."

Another psychiatrist, Dr. E. H. Davis, also testified in the hearing below. He examined Fox on July 7, 1959, two days after the confession was given, and it was his opinion that no amnesia existed at that time or when the confession was given, and that during his conversations with Fox, he [Fox] evidenced a "complete recollection of the facts" that occurred on the day of the murder.

152

Additionally, police officers, who saw and talked extensively with Fox following his arrest, testified and were of the opinion that he appeared to be normal at all times concerned.

Our study of the record is convincing that the lower court's conclusions were correct. We will, therefore, affirm.

It is so ordered.