465 A.2d 1288

**COMMONWEALTH of Pennsylvania**

v.

**Henry WATTS, Appellant.**

Superior Court of Pennsylvania.

Argued March 23, 1983.

Filed Sept. 23, 1983.

Petition for Allowance of Appeal Granted Feb. 8, 1984.

180

Robert J. Kupits, Doylestown, for appellant.

Wallace H. Bateman, Assistant District Attorney, Doylestown, for Commonwealth, appellee.

Before HESTER, JOHNSON and POPOVICH, JJ.

JOHNSON, Judge:

Appellant, Henry Watts, was arrested and charged with various offenses arising from his alleged sexual contact with Serrita Harris, a minor. He filed a pretrial application to suppress both the results of a polygraph examination and a confession given thereafter. The court suppressed the test results but denied the request to suppress the confession. Appellant was tried nonjury before another judge and was adjudicated guilty of rape,[1] corrupting the morals of a minor,[2] statutory rape,[3] indecent assault[4] and indecent exposure.[5] Post-trial motions were timely filed and subsequently denied by the court sitting en banc. Sentence was imposed and appellant has perfected this appeal.

1. 18 Pa.C.S. § 3121(4).

2. *Id.* § 6301(a).

3. *Id.* § 3322.

4. *Id.* § 3126.

5. *Id.* § 3127.

Appellant has raised seven issues.[6] While we agree with the trial court, and will rely on its discussion, that the corpus delicti was established and that the evidence was sufficient, we must reluctantly disagree with the court's failure to suppress appellant's confession. The sole basis for our divergence of opinion is based on appellant's first claim that his confession was a product of an improper agreement to admit at trial the results of the polygraph examination.[7] Finding such confession resulted from misrepresentations made prior to the testing and which were not cured, we are constrained to vacate the judgment of sentence and remand for a new trial.

Upon the advice of counsel, appellant freely chose to submit to a polygraph examination. The testing occurred on May 27, 1981. Appellant was advised of his constitutional rights. Prior to the testing appellant and counsel signed an "Agreement and Stipulation For Polygraph." Counsel had reviewed such document with appellant prior to their signing it. Paragraphs five and six of such agreement read as follows:

6. Appellant's contentions are:
(1). Defendant's Confession Was Inadmissible As The Product Of An Improper Agreement To Admit Polygraph Test Results In Evidence At Trial
(2). Defendant's Confession Was Inadmissible Because Obtained In Violation Of A Written Agreement With The Attorney For The Commonwealth And In Violation Of Defendant's Constitutional Rights
(3). Defendant's Confession Was Inadmissible And Should Not Have Been Considered By The Fact-Finder Because The Requisite Corpus Delicti Was Not Established
(4). The Information Against The Defendant Should Not Have Been Permitted To Be Amended Following The Close Of The Commonwealth's Case To Add An Additional Charge of Rape
(5). The Commonwealth Failed To Prove The Charges In Question Beyond A Reasonable Doubt
(6). The Evidence Established Ignorance Or Mistake On The Defendant's Part As To A Matter Of Fact For Which There Was Reasonable Explanation Or Excuse Constituting A Defense To The Charges
(7). Defendant's Sentences On Certain Charges Exceeded Those Provided By Law

7. Due to our resolution of this claim we need not elaborate on the remaining issues.

5. If it is the opinion of the polygraph operator that I am attempting deception when I give answers during the examination, I agree that testimony of the examiner will be presented at my trial in the above-captioned case. I specifically agree that the examiner will testify about the questions I was asked, about the answers which I gave and about his opinions regarding attempted deception on each of these answers and the scientific basis for his opinions regarding attempted deception.

6. I recognize that under the law of the Commonwealth of Pennsylvania, testimony about the polygraph examination might not be admitted at my trial over my objection, however, in view of the fact that the Commonwealth has agreed to dismiss the charges against me if I am found not to be attempting deception, I voluntarily waive my right to exclude such testimony at my trial and agree that the testimony about the polygraph examination and the opinion of the polygraph examiner will be admissible notwithstanding any existing law to the contrary.

At the conclusion of the polygraph test the examiner informed appellant that the test results indicated that he had been deceptive. The examiner then asked several questions pertaining to the alleged criminal incident and appellant gave the inculpatory responses here at issue. Appellant contends that his confession was a result of the above-created misconception that the polygraph results would be admissible at trial.

■ The Commonwealth readily admits that the results of a polygraph are not admissible even by stipulation. *Commonwealth v. McIntosh*, 291 Pa.Super. 352, 435 A.2d 1263 (1981); *Commonwealth v. Pfender*, 280 Pa.Super. 417, 421 A.2d 791 (1980). However, the prosecution contends that appellant was advised by counsel, after which he made an informed choice, and accordingly his statement was voluntary.

■ The Commonwealth has the burden of proving by the preponderance of the evidence that a defendant's con-

fession represented a knowing and voluntary waiver of his right not to incriminate himself or herself. *Commonwealth v. Bullard*, 465 Pa. 341, 350 A.2d 797 (1976); *Commonwealth v. Neely*, 298 Pa.Super. 328, 444 A.2d 1199 (1982). In determining the voluntariness of a confession courts must consider the totality of the circumstances surrounding the confession. *Commonwealth v. Jones*, 457 Pa. 423, 322 A.2d 119 (1974); *Commonwealth v. Isaacman*, 269 Pa.Super. 263, 409 A.2d 880 (1979).

It has long been the rule in this Commonwealth that a statement given after being advised that one has failed a lie detector may be admitted into evidence. *Commonwealth v. Jones*, 341 Pa. 541, 19 A.2d 389 (1941); *Commonwealth v. Hipple*, 333 Pa. 33, 3 A.2d 353 (1939). For a discussion of the admissibility of confessions made in connection with a polygraph examination, see Annot. 89 A.L. R.3d 230. However, this current appeal is controlled by *Commonwealth v. Starr*, 486 Pa. 530, 406 A.2d 1017 (1979).

In *Starr* the authorities requested that the defendant submit to a polygraph examination. The polygraph examiner orally informed the defendant, before testing, of his constitutional rights and also that there were some circumstances under which the results of a polygraph could be admitted by stipulation or court order. The defendant reluctantly agreed to take the test after the police had inquired as to why he did not wish to be tested. Following the examination the defendant was advised that the results indicated deception on his part and he was again advised of his rights. According to the defendant, the examiner told him that he did not have to say anything further because the results indicated he was lying. The defendant was told that the district attorney and the judge would be shown the results. The defendant in light of such representations "figured, well they got me" and confessed. The examiner did not deny making the statements attributed to him but instead stated if he had, "the context would have been in [a certain] form . . . ."

On appeal the Supreme Court found that some representations had been made concerning the use of the polygraph examination. The court held that the "equivocating answer by the Commonwealth's principal witness ... of precisely what representations were made ... [fell] short of satisfying the [prosecution's] burden...." *Id.*, 486 Pa. at 533, 406 A.2d at 1019. The Commonwealth failed to show that such representation did not "impinge with such force upon appellant's understanding of his right to remain silent so as to render his decision to waive that right a knowing and voluntary one." *Id.*

The trial court attempts to distinguish the present case from *Starr*, finding that unlike *Starr*, no threats were made here to the effect that the results would be shown to the trial judge. It was the court's opinion that since appellant had requested to take such a test, he was not coerced merely because he was told that he had failed it. The Commonwealth adds that if appellant suffered any misperception at all as to the admissibility of the test results, it was due to his being misled by his own attorney before he took the test; it was counsel's responsibility to inform appellant of the correct state of the law.

In *Commonwealth v. Jones*, 457 Pa. at 434–35, 322 A.2d at 126, the Supreme Court stated:

> Just as a waiver cannot be intelligent where the accused is ignorant of crucial facts, the waiver may also be unintelligent where crucial facts are misrepresented. Thus, we must also determine whether the subterfuge employed by the police precluded the accused from making a knowing and intelligent waiver.

The court further held that "any misrepresentation which may cast doubt upon the accused's awareness of these rights would necessarily render the waiver suspect." *Id.* While the court in *Starr* was concerned with a post-testing misrepresentation, we see no reason to treat a pre-testing misrepresentation any differently. A suspect informed prior to the test that any negative results will be brought into trial is subjected to the same pressures disapproved of in

*Starr.* See *People v. Zimmer,* 68 Misc.2d 1067, 329 N.Y. S.2d 17 (1972), *aff'd.* 40 A.D.2d 955, 339 N.Y.S.2d 671 (1972) (among other factors, suspect read articles supplied by police, prior to the testing).

The defendant in *Starr,* when informed of the results of the polygraph, thought "they got me." When appellant was similarly advised he "hung his head low" and uttered: "This is my whole life gone." Such an expression in light of the circumstances of this case could support an inference that the misrepresentations impinged upon appellant's understanding of his right to remain silent. The Commonwealth has failed to show otherwise.

■ As noted above, the Commonwealth contends that defense counsel's apparent approval of the polygraph agreement, and its provisions pertaining to the admission of the results, relieved the police from providing accurate representations. We do not agree. Where a defendant's waiver of a vital right is induced by counsel's misrepresentations, such representations may be so unreasonable as to vitiate what appears to be an otherwise knowing and intelligent waiver. See *Commonwealth v. Boyd,* 461 Pa. 17, 334 A.2d 610 (1975) (waiver of jury trial); *Commonwealth v. McCall,* 267 Pa.Super. 351, 406 A.2d 1077 (1979) (waiver of guilty plea); *Commonwealth v. Hairston,* 251 Pa.Super. 93, 380 A.2d 393 (1977) (waiver of jury trial).[8]

Polygraph agreements can serve to both advise a defendant, and to record the parties' understanding, of the procedure to be employed. When properly drafted to accurately reflect the law and the understanding of the parties they can assist in resolving later disputes. In the current case

**8.** Both *Starr, supra,* and *Pfender, supra,* predate the date of the polygraph examination in this case. Therefore cases such as *Commonwealth v. Triplett,* 476 Pa. 83, 381 A.2d 877 (1977) and *Commonwealth v. Garrett,* 425 Pa. 594, 229 A.2d 922 (1967) are not controlling. The Supreme Court in those cases, refused to condemn counsel's stewardship in advising their respective clients regarding the admissibility of their respective confessions as counsel was not held to a duty of forecasting a change in precedent.

defense counsel did not request that a new agreement be typed, nor did he strike out the provisions in dispute, instead he apparently accepted such incorrect provisions. We find that here counsel's failure to correct paragraph 5 and 6 of the agreement may have interfered with appellant's ability to knowingly waive his right to remain silent.

■ The current appeal demonstrates that both the police and counsel inaccurately advised appellant concerning the admissibility of the polygraph results. The Commonwealth having failed to demonstrate that such advice did not impinge upon appellant's ability to make an intelligent and voluntary waiver of his right to remain silent, we are bound by *Starr* to vacate the judgment of sentence.[9]

Judgment of sentence is vacated and the case is remanded for a new trial.

POPOVICH, J., files a dissenting statement.

POPOVICH, Judge, dissenting:

I disagree with the result reached by Judge Johnson. I believe that just as a defendant must prove that the validity of a guilty plea is tainted and *primarily* motivated by an illegally obtained confession in order to warrant its withdrawal, *see Commonwealth v. McCloud*, 312 Pa.Super. 29, 458 A.2d 219 (1983) (POPOVICH, J.), petition for *allocatur* denied August 1, 1983, so to the appellant herein must show how an incorrectly worded advisement/stipulation concerning the admissibility of the results of a polygraph test affected his inculpatory statements *given following the rendition of Miranda warnings and in the presence of counsel.*

---

**9.** We have difficulty perceiving any situation where such false information would not invalidate the confession. Furthermore, we question the ethical value of the false representations. We strongly suggest the Commonwealth establish and provide a legitimate testing procedure.